Welcome to the Fifth Circuit Court of Appeals. We have two cases to be submitted today on oral argument beginning with United States v. Lewis and Ms. Garcia-Cross. Victoria Garcia-Cross on behalf of Mr. Larry O'Dell Lewis. This is a trial case where the government destroyed evidence and vouched for the credibility of its witnesses. I'd like to focus my argument today on the two issues related to that conduct, that's issues two and three of the brief. Specifically issue two concerns whether the district court reversibly erred by denying Mr. Lewis' motion for a mistrial or to strike the testimony of its witnesses based on Rule 16, Jenks and Brady violations, and issue three concerns whether the district court erred by allowing the government to impermissibly vouch for the credibility of its witnesses. So I'll start with issue two and I'll begin by discussing the Jenks violations. The Jenks statute requires that after a government witness testifies, the government must disclose any statement of that witness that's in the government's possession and that relates to the subject matter of the testimony, and here the government violated that rule because its main investigator in this case, an investigator named Amanda Clemens, destroyed over two years of text messages between herself and another government witness that testified at the trial, a sex worker named Taylor Armentor. The government doesn't deny that its conduct violated Jenks. It only disputes harmlessness and it can't meet its burden on that front, and I want to emphasize that it is the government's burden to show harmlessness. That point wasn't clear in the government's briefs. To show that an error is harmless, this court has said that in the Jenks context, it has to show that the Jenks violation had no substantial influence on the judgment, and this court typically evaluates that question of harmlessness by looking at the importance of the evidence that wasn't disclosed and the strength of the government's case more broadly on the charges. Here, both of those factors weigh against harmlessness. This was very important evidence. Even though the evidence was destroyed, the text messages were deleted, we know a lot about what they contained. We know who they were between. They were between Amanda Clemens, like I said, who was the main government investigator into the charges that were brought against Mr. Lewis. She was the only law enforcement officer who testified at the trial who personally interviewed all of the sex workers who testified there. So they were between her and another witness who was a sex worker that the government described during the trial at ROWA 1710 as our most important witness, the one who carries the bulk of the load for admission of evidence in this case. Does this mainly go to the question of coercion? Well, Your Honor, this evidence was important because it was impeachment evidence, so it would have helped undermine the credibility of both Armentor and Clemens on all points. The evidence was important because Amanda Clemens was the only sex worker who talked about other witnesses at the trial. She talked about the Brooke Ellenbos and Carly Bradham. The time period that she was with Mr. Lewis overlapped with the time period that those other witnesses were with Mr. Lewis, and the investigator, like I said, was the main investigator on this case. We also know that these text messages spanned years. They started in February of 2021, and they extended until August of 2023. So this was years of important impeachment evidence. And we know that the text had to do with the case. Like I said, the texts were destroyed, but both the government and the witnesses talked on the record about what the texts contained, and they said that Amanda Clemens would reach out to Taylor Armentor to confirm that she wanted to testify at the trial. We know that she texted Taylor Armentor photos of the other sex workers and their other statements to check to see if Taylor Armentor knew those sex workers and could corroborate what they were saying. And we also know that the investigator, Amanda Clemens, would offer her own opinions about the strength of the case and her opinions about Mr. Lewis's character. So she testified that she told the other sex workers that Mr. Lewis was an asshole and that they needed to get this person out of their lives. So having this evidence would have allowed the government, the defense, excuse me, to impeach both of those witnesses. Moving to the other factor that this court is supposed to consider, the strength of the case against Mr. Lewis, this wasn't a case where the evidence was overwhelming. There were eight charged counts. It was a combination of sex trafficking charges and coercion and enticement charges, and each of these counts involved a particular sex worker who testified at the trial. So it really came down to the credibility of those sex workers. In order for the jury to find Mr. Lewis guilty, they had to believe that those sex workers were telling the truth, at least about the elements that were important for the charges. And these sex workers all had significant credibility issues. And it would have undermined not just the coercion element, but all of the elements that the government had to prove. They had significant credibility issues because they testified that they used addictive drugs throughout the time period that was listed in the indictment and afterwards. And it wasn't just marijuana. They used ecstasy. They used heroin. They used drugs that are known to be mind and memory altering. So they had this history of drug use. They were also testifying about periods and memories that had happened about a decade before. So Taylor Armentor, the witness that I mentioned, was testifying about a period from 2014 to 2015. This trial happened in 2023. So these were old memories and these were people who had been through significant traumas throughout their lives because they had experienced life prostitution from before they were with Mr. Lewis and afterwards. So it's not the most, they weren't the most credible witnesses. They also all received substantial benefits as a result of their cooperation with Mr. Lewis or with the government, excuse me, against Mr. Lewis. They received gifts. They received resources. One of them was promised that she could have potentially her criminal history expunged. Another one was promised and given a sentencing reduction. And the best reflection of the closest of this case is the fact that Mr. Lewis received an acquittal on one of these counts. And this court has said before that a split, a split verdict like this one weighs against harmlessness because it shows that at least the jury wasn't prepared to find Mr. Lewis completely culpable. And finally, we've argued on page 11 and 12 of our reply brief that any good faith from the government in deleting these texts isn't relevant to whether Jenks was violated and whether that was harmless. But even if this court considers that factor, it weighs against the government and it weighs against harmlessness because this was significant negligence on the part of the government. This was not an accidental deletion of text like what we saw in the Ramirez case where BOP jail calls were deleted after routine procedures. This was an intentional deletion of evidence. Amanda Clemens, the investigator who did this, testified at trial that she had been an investigator in Harris County for over 20 years. She investigated murder cases, rape cases, sex trafficking cases, child abuse cases. She should have known that this was important evidence that the defense is oftentimes constitutionally entitled to. What reason did she give for the deletion? Your Honor, she testified that she deleted it because she did. The witness had gotten a new phone number and she didn't want to accidentally delete, excuse me, accidentally text the wrong person. But that really isn't credible because she also testified that she hadn't done that when other witnesses delete, changed their phone numbers. Excuse me. So this was the only witness whose text you're containing that she was lying. Your Honor, I'm suggesting that the court can look at that comment with skepticism and can consider that at the very least, there was great negligence in deleting these messages. She should have known that it's important evidence and she deleted it. And she testified that she deleted it without thinking twice about it. This was at the very least negligence on the part of the prosecutor who said during the trial that they had directed their outreach, the outreach between Clemens and the witnesses, and knew that Clemens was texting these witnesses and apparently never directed the police to preserve those texts. Clemens testified before the district court judge. They never asked. That's at Roe in 1919. And not only that, the prosecutor made affirmative representations to both the defense and to the district court about the integrity of the evidence. They said at a pretrial hearing that we haven't misplaced any evidence. Everything we've collected, we have. Nothing is lost. At Roe 716, they scoffed at defense counsel's arguments that there could have been evidence that was lost over time, saying the notion that we've lost evidence is simply not true. We know now that that wasn't the case. So this was very important evidence. It was a close case and there was significant negligence on the part of the government. This court shouldn't find that this error was harmless. And turning briefly to the constitutional issue as well, this conduct also violated Brady. To prove a Brady violation, the defense needs to show that there was favorable evidence that was suppressed by the government and that was material. The government doesn't appear to contest the first two factors, the fact that this evidence was favorable to Mr. Lewis and that it was suppressed by the government. So the only question is whether it was material and it was, and the district court appeared to have agreed. It said it several times throughout the trial that it considered this evidence to be that's at row at 1286 and 1744. And in any event, it meets the standard for materiality. Materiality, this court has said, is a reasonable probability that if the evidence was disclosed, it would have affected the result of the trial. And, but, but also evidence is not material if it's strongly corroborated by additional evidence. If there, that's true, Your Honor. If it, if there is other evidence that, um, excuse me, can I clarify, Your Honor? Do you mean that if there's cumulative evidence that would have also strongly corroborated by additional evidence? Yes. And it's not material. Yes. Or it doesn't meet the materiality test. That's true, Your Honor. This court has said that, uh, if there's other evidence of guilt, that's overwhelming, that, uh, not disclosing certain information may not rise to the level of a material Brady violation. That's not the case here though, because as I said, this was really important impeachment evidence. It would have allowed Mr. Lewis to attack the credibility of, um, Ms. Armentor, and it also would have allowed them to attack the integrity of the investigation. And the Supreme Court said in Kyle's versus Whitley, that evidence that allows the defense to attack the integrity of the investigation is something that is material Brady, um, evidence. Several other witnesses in this trial that corroborated Ms. Armentor's testimony, correct? To some degree, Your Honor, there were four sex workers who testified at the trial. Uh, the time periods did not entirely overlap. So Ms. Armentor, according to the indictment and the evidence that the government, um, presented at trial, she was with Mr. Lewis between January of 2014 and March of 2015. So the other sex workers were with Mr. time periods. One was there for, um, Brooke, Brooke Ellen boss was there between January and July of 2014 to about half the time. Uh, Brooke, um, excuse me, Carly Bradham was there between, um, the March of 2014 and December of 2014. And then the other witness was there for a totally different time period. She was there with Mr. Lewis from 2016 to 2017. So there was some amount of overlap, but Armentor, um, was really the only one who was there with Mr. Lewis between 2014 and 2015. And she was the one that, like the government said, uh, at trial carried the bulk of the weight for admitting evidence. She was there, she was their star witness. Um, and so even if this court doesn't agree, however, about the Brady violation, there was reversible error in this case because the government vouched for the testimony of its witnesses. And it did that in a few different ways. First, it had law enforcement witnesses repeat the testimony of the sex workers. And second, it had, um, it had witnesses talk about the benefits that they had received from the government. I'll talk about both of those briefly. Um, the government first committed improper vouching when it had law enforcement repeat the testimony of the sex workers. The, um, the court has said that it's impermissible for a witness to testify in a way that merely vouches for the testimony of somebody else here. That's essentially what the government did. It presented the sex workers as the, the, the witnesses that it presented kind of in the middle of the trial. And it's sandwiched their testimony between law enforcement officers. Amanda Clements testified before Ellen Boss and Bradham. And she said what those witnesses had experienced with Mr. Lewis. She said that Ellen Boss, for example, had experienced, um, had, had been forced to engage in prostitution at Mr. Lewis's direction at Roa 1833. And at Roa 1838, she said that, um, uh, Bradham had experienced physical abuse, uh, by Mr. Lewis. So that kind of primed the jury to believe what those witnesses were next going to say. And then at the very end of the trial, the government presented as their final witness, a law enforcement officer who then talked about our mentors experiences and said that our mentor had another sex worker that I had mentioned before had been forced and compelled by Lewis to engage in sex work. So that reinforced the testimony of the sex workers and kind of made it more credible to the jury. The government also vouched, um, in other ways that are explained in the brief. I see my time has elapsed. So unless the court has further questions, reserve time for rebuttal. Yes. You say time for a while. Thank you. Mr. Smith. Good morning. May it please the court. Jason Smith for the United States. Um, I want to first address appellant's assertion that the district court somehow found the deleted text material texts, uh, material. This subject came up at sentencing when the defense was pushing this as a basis for a motion for a new trial or to set aside the verdict and there the district court said, uh, the people involved in the texts had quote testified what they said and they were immaterial. I mean, they, they weren't anything that was exculpatory. So the district court did not find that those deleted text messages were somehow material or a thing that would have changed the outcome of this case. And with good reason, as we outlined in our brief, both investigator Clemens and Taylor Armentour were subject to substantial impeachment along what one would expect to be the same lines that would have been available if these deleted texts had been available. The government turned over to the defense, other text messages between investigator Clemens and Taylor Armentour. Uh, they also disclosed substantial benefits that the investigator had provided to Ms. Armentour in terms of gifts for her baby services, uh, and similar Jiglio disclosures were made with respect to the other witnesses. And that was a, as you would expect in a trial, um, that appellant has task for it with respect to theər accountability of the sex worker, victims, that was a focus of the trial. And it was a theme of the defense. And there is no reason to think that the deleted text messages would have had anything different in kind would have been so substantially different, uh, to as altered the outcome of the case. With respect to the, there are a couple of other points I want to make about that. Um, the defense was given very wide latitude with respect to those deleted text messages, they had the opportunity to, uh, question investigator Clemens in front of the court without the jury present, they also cross examined investigator Clemens about the deletion of those text messages in front of the jury, uh, and that cross examination shows up at pages 1876 through 78 of the record, and again at 1917 through 1919 in the course of that cross examination, defense counsel was able to attempt to impeach investigator Clemens about the reason she gave for deleting the text messages by saying, well, the story you're telling here in front of the jury is a little different than what you told the judge, that's at pages 1918 to 1919 of the record. And then in closing the defense twice argued, uh, essentially spoliation with respect to, um, to the deletion of those messages and that shows up at page 2898 of the record, defense counsel argued Clemens had two years of text messages that she deleted as a member of law enforcement, she's deleting text messages that could have been useful for trial testimony and he picks up again at page 2906, um, she says, the defense counsel says, Amanda Clemens, for however long she's been working, said, I discarded evidence of text messages between her and Taylor. When I asked, why did you do that? There's not a real good answer. Why would you delete evidence unless those text messages were unfavorable to the government? Otherwise, there's no reason to get rid of them. She knows better cops know better than to erase evidence. Now, substantively, I, I don't agree with those assertions there. I think the characterization of these text messages as evidence is jumping the gun a little bit, but that is very helpful to illustrate the wide latitude that was given to the defense to use the fact of the deletion at trial, given that, that, uh, something like a spoliation instruction is the kind of thing that could have been a remedy for deletion of text messages. The fact that defense counsel was able to do this without intervention from the court, without intervention from the government shows, uh, the ability that they were, they were given to make, make use of this here. One of the other, and I say that the defense is jumping the gun a little bit here, referring to these as evidence, um, the information about the contents of those messages. As I said, defense had the opportunity to ask investigator Clemens about the contents of these messages so that they could lay the predicate to actually show that they were jinx, to show that they were statements related to the subject matter of a witness's testimony on direct, or to show that they actually qualify as rule 16, that they would be material to the preparation of the defense and defense counsel only asked one question of investigator Clemens. They said in these particular text messages with Taylor, you did in fact talk to her about the case, which investigator Clemens answered I did, but that's not enough to establish that these are either jinx, certainly that they're material or that they are, uh, impeachment evidence for Jiglio, but defense didn't go any further. The record doesn't show whether that was a strategic decision to not ask that question, to find out more about the details of these texts, because it might well have shown that those discussions about the case were logistical discussions show up at this meeting here, or whether that was just an oversight. But either way, defense counsel has not, did not use that opportunity to show that, to develop the record that they would need to show that these statements were actually covered by jinx, covered by rule 16 were material. We don't concede that these were a jinx violation in the course of briefing. This materiality is really sort of an overarching concern when there are these kinds of bare assertions about something being jinx or Brady or Jiglio. Um, and that is a, uh, efficient route for the court to dispose of this, but we don't agree that the defense has laid the predicate, uh, for these to be subject to disclosure, either under jinx or under rule 16 and certainly not Brady or Jiglio. Ms. Garcia, Cross told us that the government disputes only harmlessness and not whether it was a jinx violation. But I heard you just say that the government does not concede that. Correct. That's correct. Your honor. I said, in terms of efficiency, materiality is the thread that runs through all of these assertions, but there is no, there is no basis for finding a jinx violation here. There is no showing that the deleted text messages were, uh, uh, related to the subject matter of the testimony of anyone on direct, which would be a. Unnecessary predicate for showing a jinx violation. I want to turn, unless the court has, Oh, sorry. The one other point that I want to make about that defense counsel here also, um, takes issue with investigator Clemens explanation of why she deleted those text messages. Investigator Clemens testified that Taylor Armentour, uh, one of the victim witnesses got a new phone number. The investigator had been texting with Taylor, uh, with respect to various things, and she deleted the old text thread to make sure that she was in fact texting her on the correct number. And in seeking to, uh, challenge that testimony or that explanation, the defense refers to the investigator having not done that with another witness. The other sex worker witness who got a new phone was a woman named Carly Bradham. And the, uh, investigator explained when testifying before the court, why she had taken a different approach with Carly and had not deleted the old text thread with Carly when she had with Taylor. And the first thing, uh. That part of the questioning happened in front of the jury or just before the judge? This was before the judge, Your Honor, but not before the jury.  Correct. This was, yes, this was without the jury present. Um, so the jury was not aware that there was another person who had a new telephone number and the messages were not deleted, Your Honor. I would have to look back at the transcript. I think that there was a question asked by the defense along those lines in and I'd be happy to submit a 28-J letter on that. Um, but the explanation of why there was a difference, I know that that happened with just, just in the courtroom with the judge there, I don't think that happened. Um, but what investigator Clemons explained before the, to the judge first in the context of describing why she deleted the old text thread with Taylor. She says, uh, page 1747 of the record. Um, I text a lot of people as far as witnesses. Uh, and at one point I had three different tailors in my phone, so I just, I've never been asked for messages during any of my cases, so I didn't think anything of it when I deleted that text thread so I could make sure I was texting her on the right number. So that's her explanation. She had three tailors in the phone at one point. She deleted the old threat when she's asked about why there's a difference with how she handled Carly's new phone number that shows up at pages 1750 to 1751 of the record. The investigator explains that that new number that Carly got was maybe a month ago, maybe a month before the trial starts in this case. And at that point, investigator Clemons was both working on prepping this trial and she was working on the trial in the other case. And she quote, didn't know she had a new number until recently. And she goes on to explain, quote, when you look at the text thread, it'll say Carly to see if she'll respond. Cause I thought that was still her same number. So the difference here is that, or a difference as the investigator explains it is the timing of what's going on, the circumstances as to how many different tailors she has in her phone and the fact that she hasn't yet realized that Carly's new number is a new number that she should be using exclusively and that she should get rid of the other one. And to the extent that the defense disagrees with that explanation, the district court credited it and it credited it after hearing live testimony from the witnesses. And that kind of credibility determination is the kind of thing that is the province of the district court that we defer to because the court saw people testify. The court didn't make an explicit credibility finding at the time that testimony came in, but it did address that issue at sentencing again, in the context of the new trial motion. And there at page 2959 of the record, the district court says that the deletion quote, it was just done in her ordinary life. Like people do. It didn't seem anything sinister. So the district court credited that explanation and that was the district court's call to make the defense hasn't shown any evidence substantial enough to, to overturn that credibility determination. I want to turn briefly to the issue of vouching and bolstering. Um, defense characterized their argument as an argument based on vouching. The fifth circuit case that they cite in their brief, when it's not a vouching and bolstering case, it's a case about a summary witness under a rule of evidence that didn't apply here because there were no summary witnesses. Um, vouching in my experience has to do with a prosecutor standing up and saying, you should believe that witness because I know they're telling the truth. Number one, that didn't happen here. Number two, no one objected to it. Number three, that's not the argument that's being made on appeal. This is a case where the prior statements during interviews of the witnesses were a significant focus at trial. The defense spent a bunch of time, uh, seeking to impeach the witnesses on the basis of statements that they had made. Well, strike that. Spent significant time attacking the credibility of witnesses based on statements that they had made, uh, previously to investigators. Most of that didn't come out on cross examination of the victim witnesses. Most of it came out in questioning, uh, the law enforcement officers who were present there. And an example there is at pages 1868 to 1874 of the record when defense counsel was extensively cross examining investigator Clemens about Taylor's prior statements. The flip side of that comes up, uh, in another one of the investigators testimonies, investigator Larson, uh, who on direct during his testimony at 2635 to 2645 of the record, the government elicits substantial evidence of prior statements by the witnesses, which they were under rule 801 D one B as a prior consistent statement of the witness. There's extensive discussion of that, uh, in the record. And the reason that the government is offering these as prior consistent statements, because the credibility of the victim witnesses has been attacked. That that's a context in which to look at the claim that there was improper vouching here. Um, first there wasn't under the definition of vouching that is normally applied, but second did both sides were putting in, uh, prior statements under different reasons under the hearsay rule and the prior statements were a big enough focus of the defense case that again, the defense hits it on closing page 2913 of the record defense counsel says the government's witnesses statements on the stand for a large part and the real crucial things, the real crucial matters were in contrast with earlier statements. We know that because we have confirmation from people like Lieutenant Larson in that context to come up with what is a new argument on appeal and say, Oh, the government was improperly vouching by putting in these prior statements is not a valid basis for upsetting the conviction here. I'm happy to answer any questions that the court might have. Would you address Ms. Garcia crosses statement that the evidence here was not overwhelming and that it depended on the credibility of the sex workers jury returned a verdict in about three hours. And she also points out it was a split verdict, excuse me, it was a split verdict, which shows that the jury was careful even being careful. It took them three hours to return a verdict, convicting the defendant after a six day trial, after almost a week of testimony, respectfully disagree with the characterization of this as a not overwhelming case. There are four victims who testified in graphic and corroborated detail about the brutal system that the defendant used to compel them to engage in prostitution. They testify consistently about how he took all of the money that they were paid for that, how he controlled their access to food and drugs, how he savagely beat them, how there was no excuse sufficient for them to not engage in commercial sex acts, how even when the women were menstruating, he required them to insert cosmetic sponges in their vaginas to continue having commercial sex. The idea that this was not an overwhelming case is not consistent with the record. Unless the court has any further questions, we'll rest on our briefs. Garcia-Cross for rebuttal. I'd like to address three points on rebuttal. The government says that it doesn't contest these jenks violations. That's nowhere in their brief. Um, the government nowhere in their brief says that these aren't jenks statements, that these weren't in the possession of the government and that these didn't relate to the subject matter of the testimony. So it's, uh, it can't stand up today or argument and suddenly raise a new argument about how these actually aren't really jenks statements. The government also says there's no reason to think that this deleted evidence would have been helpful to the defense and that the texts weren't about the details of the case. Well, that's not what the prosecutor said during the trial, the prosecutor and Clemens and Armantor stood up during trial and said, we texted about the case. We texted details about the case. We texted about, uh, the accounts that the other sex workers had reported to Clemens. Um, and the prosecutor said, we directed Clemens to send other sex workers statements to Armantor in order to corroborate and to see whether Armantor could, could agree that those, um, that she knew about those accounts or she knew about those sex workers. These texts were about the very essence of this case. And it was critical that defense should have access to this important information. Um, these were in fact, dream impeachment materials. They would have allowed us to attack the integrity of the investigation. And the Supreme court has said in Kyle's versus Whitley and in numerous other that evidence that allows you to impeach in this way and to attack the integrity of the investigation should be in the hands of the defense. The court said in Jenks versus United States, the case that started at all, it said that texts, uh, excuse me, that evidence doesn't have to contradict trial testimony. Past statements don't need to contradict trial testimony in order to be drink statements. They said that past statements are invaluable for impeachment because they can, uh, omit facts. Inevitably they omit facts that are presented at the trial. They may place a different emphasis on certain facts. They may relay facts in a different order. And all of that can be helpful for undermining credibility. These texts would have been very helpful for undermining credibility and credibility was the key issue in this case. The government's also argued that, um, it disagrees with our arguments regarding vouching. And it says that, um, this isn't, this isn't a vouching case. The prosecutors never stood up and vouch for the credibility of the witnesses.  And counsel said that you were able to flesh out the agent's reasoning for deleting the text messages and the fact that she deleted those text messages so that the jury was able to take that reasoning into account during its deliberations. What's your response to that? Your honor, it's true that the defense was able to cross examine Clemens based on her deletion of the messages. That fact came out. However, there was no special instruction given. There was no spoliation and the government mentioned that spoliation instructions are sometimes warranted in this situation. There wasn't one given here. In fact, the jury received an instruction that, um, that defense counsel and prosecutor arguments aren't evidence as they do in every case. And so actually if the, if the jury had listened to the instructions of the court, it would have discounted at least the arguments that were made in closing from defense counsel about how this was, this was important. And simply there's no substitute for the evidence itself. The defense was able to cross examine, but it didn't have those statements. It couldn't stand up and say, Ms. Armentor, you, you testify today X, Y, Z, but in your past statement, you said it a little bit differently. There's no substitute for that. And the defense was robbed of the opportunity to cross examine the witness in that way. Um, unless the court has further questions, I'll briefly address the vouching argument that the government made. The government said that, um, there wasn't vouching in this case. That's not true. The government vouched in various ways, but one of the ways that it vouched was it had one of the sex worker witnesses express the benefit that she'd received after testifying against other traffickers in another case. It explained that, uh, it elicited testimony of that sex worker, Stephanie Walker, um, and had her say that she had cooperated against other defendants. That cooperation had led to the conviction of other defendants. And then it asked her a question in rebuttal after there was no need to kind of blunt the sword of any potential impeachment, it asked her in rebuttal. So you help put bad guys in jail. And she said, yes. And then in closing, in closing arguments, the prosecutor stood up and said, so I'm pretty sure you believe Ellen Voss, another of the sex workers. And everything she told you in rebuttal, it said little inconsistencies in witness statements, uh, they, they mean that quote, a witness is telling the truth. Those statements are clear vouching and they weren't harmless because as I said, this was a close case, no matter what the government says, it did come down to credibility, the government, the jury had to believe these sex workers were telling the truth in order to convict Mr. Lewis, there weren't videos of, um, of him doing any of the conduct that was alleged, it came down to their words and the jury needed to believe them. And so because of the Jenks violations, the Brady violations and the vouching issues that came up in this trial, Mr. Lewis did not receive a fair trial. And we asked that this court reverse the conviction and remand. Thank you. So you're asking for, you're asking for a remand. So that would mean that you're conceding that the evidence was sufficient such that there would not be a judgment of acquittal. Thank you for allowing me to clarify your honor. We don't concede issues one and four issue one was where we briefed the sufficiency issue, but we think those are very fact sensitive and adequately presented on the briefs. And so I wanted to focus my argument today on issues two and three. So should the court disagree with issue one and disagree that certain counts result in an acquittal, then we asked the court to reverse, um, all counts and to allow a new trial. Thank you. Thank you. Moving further, do you have any other comments or thoughts on the submission on NT117, table 122?      Remaining case for today, uh, Lyskano. Versus Gale.